**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ALLEN TUCKER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:22-CV-00003-NCC** |
| | ) | |
| **BILL STANGE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on Petitioner's pro se Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1).  Respondent has filed a response (Doc. 13), and Petitioner has filed a reply (Doc. 16).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. 8).  After reviewing the case, the Court has determined that Petitioner is not entitled to relief.  As a result, the Court will **DENY** the Petition and **DISMISS** the case.

### I.    PROCEDURAL HISTORY

On October 26, 2016, Petitioner was found guilty by a jury in Circuit Court of Iron County, Missouri of sexual abuse in the first degree (Count I) and attempted enticement of a child (Count II) (Doc. 13-1 at 382-383).  The Circuit Court followed the jury's recommendation and sentenced Petitioner to 15 years of incarceration for each count, to run consecutively in the Missouri Department of Corrections (Doc. 13-1 at 404-05).  Petitioner appealed the judgment, raising three claims:

(1) The trial court abused its discretion in sustaining respondent's offer of proof and permitting [L.B.'s][1] testimony as to an alleged uncharged crime in derogation of [Petitioner's] rights to be tried only for the offenses for which he is charged, due process of law, and to a fair jury trial under the Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18(a), and 22(a) of the Missouri Constitution, in that, where [L.B.'s] alleged incident did not constitute an uncharged crime, she was of the age of majority when the incident allegedly occurred, respondent introduced this propensity evidence through live testimony instead of by stipulation, and where the prosecutor used this propensity evidence in an unduly emphatic, inflammatory manner, any probative value of that evidence was substantially outweighed by the danger of unfair prejudice to [Petitioner] and its exclusion was compelled under Mo. Const. art. I, § 18(c); the cumulative effect of [L.B.'s] testimony together with the trial court's erroneous admission of other illicit testimony was so prejudicial as to deprive [Petitioner] of a fair trial.

(2) The trial court abused its discretion in overruling [Petitioner]'s motion to exclude [K.F.] from testifying and permitting her testimony as to an alleged uncharged crime in derogation of his rights to be tried only for the offenses for which he is charged, due process of law, and to a fair jury trial under the Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18(a), and 22(a) of the Missouri Constitution, in that, where [K.F.] alleged incident was an uncharged act, respondent introduced this evidence through her live testimony, and where the prosecutor used this propensity evidence in an inflammatory manner, any probative value of that evidence was substantially outweighed by the danger of unfair prejudice to [Petitioner] and its exclusion was compelled under Mo. Const. art. I, § 18(c); the cumulative effect of [K.F.'s] testimony together with the trial court's erroneous admission of other illicit testimony was so prejudicial as to deprive [Petitioner] of a fair trial.

(3) The trial court plainly erred in refusing to *sua sponte* declare a mistrial or take any curative action after the prosecutor questioned [Petitioner] whether his father was "in prison in North Carolina for molesting his granddaughter[ ]" in derogation of his rights to due process of law and to a fair jury trial under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 18(a), and 22(a) of the Missouri Constitution, in that, where the prosecutor's question had the force of a factual statement and served no other purpose than to show [Petitioner]'s familial propensity for child sex crimes and inflame the jury against him, it was unreasonable and made in bad faith such that the highly provocative nature of the prosecutor's testimony could only be cured by the extraordinary remedy of declaring mistrial.

---

[1] Respondent filed redacted exhibits to protect the name or any identifying information of witnesses in the underlying criminal case.  Accordingly, "L.B.", and "K.F." will be used to refer to certain witnesses who are "victim[s] of sexual crimes." (Doc. 11).

(Doc. 13-3 at 11-13). On November 20, 2018, the Missouri Court of Appeals for the Southern

District affirmed the Circuit Court and issued its mandate (Doc. 13-6).

Petitioner filed his pro se motion for post-conviction relief on December 21, 2018, and

the motion court appointed post-conviction counsel for Petitioner that same day (Doc. 13-8 at 3).

Petitioner filed his amended motion for post-conviction relief, along with a Motion to Declare

Abandonment and Adjudicate Appellant's Untimely Amended Motion, on August 26, 2019 (*Id.*

at 5).  Following a hearing, on June 29, 2020, the motion court found that Petitioner had been

abandoned, accepted the amended motion as timely filed, and conducted an evidentiary hearing

on the amended motion (Doc 13-8 at 56). On August 31, 2020, the motion court issued findings

of fact and conclusions of law denying Petitioner's amended motion, and on October 2, 2020,

Petitioner filed a notice of appeal (*Id.* at 9). Petitioner's appeal raised three claims:

> (1) The motion court clearly erred in denying [Petitioner]'s Rule 29.15 motion for
> post-conviction relief because a review of the record leaves a  definite and firm
> impression that [Petitioner] was denied effective assistance of counsel under the
> Sixth and Fourteenth Amendments to the United States Constitution and Article I,
> Section 18(a) of the Missouri Constitution in that his trial counsel failed to act as a
> reasonably competent attorney would under the same or similar circumstances
> because his trial counsel failed to object to Deputy Scott Maxey's testimony that,
> upon being questioned, [Petitioner] responded that his attorney told him not to
> speak, on the basis that the testimony was an improper comment on [Petitioner]'s
> post-Miranda silence. [Petitioner] was prejudiced in that, if counsel had objected to
> the testimony on the aforementioned basis, a reasonable probability exists that the
> trial court would have sustained such an objection, and without the benefit of such
> testimony, the outcome of [Petitioner]'s trial would have been different.
>
> (2) The motion court clearly erred in denying [Petitioner]'s Ruling 29.15 motion
> for post-conviction relief because a review of the record leaves a definite and firm
> impression that [Petitioner] was denied effective assistance of counsel under the
> Sixth and Fourteenth Amendments to the United States Constitution and Article I,
> Section 18(a) of the Missouri Constitution in that [Petitioner]'s trial counsel failed
> to act as a reasonably competent attorney would under the same or similar
> circumstances by failing to object to the testimony of forensic interviewer, Kelly
> Tesson, concerning the credibility of [victim], on the basis that it constituted
> improper vouching for the credibility of another witness, which invaded the
> province of the jury. [Petitioner] was prejudiced by his trial counsel's failure

because the jury was allowed to consider Tesson's improper vouching for [victim]'s credibility. Had such an objection been made, a reasonable probability exists that the trial court would have sustained the objection, and without the improper vouching, the result of [Petitioner]'s trial would have been different.

(3) The motion court clearly erred in denying [Petitioner]'s Rule 29.15 motion for post-conviction relief because a review of the record leaves a definite and firm impression that [Petitioner] was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 18(a) of the Missouri Constitution in that his trial counsel failed to act as a reasonably competent attorney would under the same or similar circumstances by failing to properly object to the prosecutor's improper cross-examination of [Petitioner] during which the prosecutor asked [Petitioner] whether everyone else is lying. [Petitioner] was prejudiced by his counsel's failure to properly object to the improper cross-examination in that such an objection would have properly been sustained, and inasmuch as the case hinged on [Petitioner]'s credibility, as judged against the credibility of [the victim], the complaining witness, there is a reasonable probability that without the improper cross-examination technique used by the state, the outcome of the trial would have been different.

(Doc. 13-9 at 15-19).  The Missouri Court of Appeals' Mandate in Petitioner's post-conviction appeal issued on September 22, 2021 (Doc. 13-11 at 1).

On December 30, 2021, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1).  For each ground, Petitioner simply stated, "please refer to brief" (*Id.*). He generally did not answer the remaining prompts in the petition for each ground of relief (*Id.*).  However, he attached in the same filing as his Petition, *inter alia*, his direct appeal and post-conviction relief briefs (Doc. 1-1) and two handwritten documents (Doc. 1-2, 1-3). Respondent objects to the form of Petitioner's petition (Doc 13 at 4-6). The Court will therefore first address the form and content of Petitioner's grounds for relief.

## II.    DISCUSSION

### A.  Legal Standard for Reviewing Claims on the Merits

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, to exercise only "limited and deferential

review" of underlying state court decisions. *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has the "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C.A. § 2254(e)(1).

A state court decision is "contrary to" clearly established Supreme Court precedents "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

### B.  Legal Standard for Procedurally Defaulted Claims

To preserve a claim for federal habeas review, "a state habeas petitioner must present that claim to the state court and allow that court an opportunity to address his claim." *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim "only where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992)).

### C.  Claims Not Properly before the Court

Respondent objects to the form of the petition "because the petition does not make clear what claims [Petitioner] intends to raise in this Court" (Doc. 13 at 4). A properly filed petition for relief under § 2254 must, among other things, "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *McFarland v. Scott*, 512 U.S. 849, 856 (1994) (citing 28 U.S.C. § 2254 Rule 2(c)). The Eighth Circuit has held that to comply with Rule 2(c) of the Rules Governing Habeas Corpus Cases Under Section 2254, a petitioner "must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990).  A petitioner's "general reference to the transcripts, case records, and briefs on appeal patently fails to comply with Rule 2(c)." *Id.* at 333. However, a "petition filed by a *pro se* petitioner should be interpreted liberally and ... should be construed to encompass any allegation stating federal relief." *Harris v. Wallace*, 984 F.3d 641,

6

647 (8th Cir. 2021) (internal quotation marks and citations omitted); *see also Thompson v. Mo. Bd. of Parole*, 929 F.2d 396, 399 (8th Cir. 1991) (giving liberal construction to *pro se* habeas petition to find the petitioner adequately pleaded claims for relief).

Here, Petitioner's first attachment to his petition is a collection of correspondence and filings, some annotated by Petitioner, related to the state court proceedings of his underlying criminal case (Doc. 1-1). This attachment includes the briefs asserting his claims on direct appeal and post-conviction appeal (Doc. 1-1 at 14-54, 77-116). Petitioner's second attachment is a handwritten letter (Doc. 1-2).  Although Petitioner expresses criticisms of his trial and of his trial counsel in this letter, he does not organize the letter into allegations sufficiently cohesive for the Court to identify claims to review.

 Despite the liberal interpretation afforded to *pro se* petitioners' filings, "[e]ven *pro se* litigants must comply with court rules and directives." *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005). The Court is not required "to sift through voluminous documents filed by habeas corpus petitioners in order to divine the grounds or facts which allegedly warrant relief." *Adams*, 897 F.2d at 333. To the extent Petitioner's letter (Doc. 1-2) asserts additional grounds for relief beyond those he presented in state court, the Court finds that these grounds fail to comply with the specificity requirements of § 2254.[2]

Respondent interpreted Petitioner's petition as raising the same claims he raised during his direct appeal and post-conviction appeal (Doc. 13 at 6). The Court agrees. The Court will accordingly focus its discussion on the claims Petitioner raised on direct appeal and in post-conviction appeal.

---

[2] The Court also expects that these claims would be procedurally defaulted. To the extent that Petitioner did not preserve these claims under Missouri law—and Petitioner does not attempt to make any showing of cause and prejudice, nor does he argue that the fundamental miscarriage of justice exception applies—the Court may not grant relief on these claims.

**D.  Direct Appeal Claims**

The Court of Appeals summarized the facts of Petitioner's case, as relevant on direct appeal, as follows:

> [Victim] was approximately twelve years old at the time of the alleged offenses and had a family connection to [Petitioner]. Victim was regularly dropped off at [Petitioner]'s house by the school bus. Victim also spent the night at [Petitioner]'s home from time to time.
>
> Victim testified that [Petitioner] first touched her inappropriately in his living room when she was in middle school. Victim was sitting on the couch, and [Petitioner] moved closer to her. [Petitioner] said that he was not going to hurt her, then touched her vaginal area "skin to skin[.]" [Petitioner] also touched her breasts in the living room on a different day.
>
> Over a period of time, [Petitioner] touched Victim between her legs more than ten times. He also put his finger inside Victim's vagina, causing it to bleed. One morning, after spending the night in [Petitioner]'s home, [Petitioner] came into Victim's bedroom, exposed his penis, and offered her $200 to have sex with him. Victim did not tell anyone about [Petitioner]'s abuse because she did not think that anyone would believe her. The abuse continued on a regular basis until Victim finally told her best friend about what was happening to her. This friend urged Victim to tell her mother about the abuse. Victim did so, and her mother promptly called the authorities.
>
> The State charged [Petitioner] with sexual abuse in the first degree for knowingly having sexual contact with Victim ("Count I") and enticement of a child for offering Victim $200 to have sex with him ("Count II").
>
> Prior to trial, the State notified the trial court that it intended to offer Section 18(c) Propensity Evidence from another relative of [Petitioner], L.B. ("L.B."), about what the State alleged to be the uncharged crime of harassment that [Petitioner] had committed against her. During a pretrial hearing, the trial court announced that it would not be allowing that evidence in, but it would allow the State to make an offer of proof during the trial.
>
> During that offer of proof, taken after the State's opening statement, L.B. testified that she and [Petitioner] were riding together in a car in 2005 when [Petitioner] placed his hand on her thigh and said he would give her $200 if she would let him see her breasts. L.B. was around 22 years old at the time. She also testified that she found his language offensive, and she expected [Petitioner] to touch her in some offensive way. Upon considering the offer of proof, and the arguments of counsel, the trial court stated that it would allow L.B. to testify at trial before the jury consistently with the testimony she gave during the offer of proof.

The trial court also allowed another witness, K.F., to testify that [Petitioner], a relative, told her ten years previously (when she was 16 years old), "I'll give you $20.00 if you show me your pussy." Prior to trial, [Petitioner] filed a "Motion to Exclude [K.F.] from Testifying," which the trial court denied in a docket entry after an off-the-record argument conducted in chambers. [Petitioner] did not object at trial to K.F.'s testimony

[Petitioner] took the stand in his own defense and denied committing any of the acts alleged by Victim, L.B., and K.F. The jury found [Petitioner] guilty on both counts, and it recommended sentences of 15 years on each count. The trial court imposed the recommended 15-year sentences, running them consecutively to produce a total sentence of 30 years.

(Doc. 13-6 at 2-4).

i. **Ground One: Trial Court Error in Admitting Testimony from L.B. under Missouri Constitution Article I, Section 18(c)**

In Ground One, Petitioner argues, as in his direct appeal, that the trial court erred in admitting testimony from L.B. about an uncharged crime because the incident did not constitute a crime and was more prejudicial than legally relevant to the charges for which Petitioner was being tried.

The Missouri Court of Appeals found that even if, *arguendo*, the trial court erred in admitting L.B.'s testimony, such error was not outcome-determinative such that reversal was warranted.  The Court of Appeals stated:

We review the admission of evidence for abuse of discretion, but we may reverse only if the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Prince*, 534 S.W.3d 813, 818 (Mo. banc 2017). Such a deprivation occurs if the evidence "was 'outcome determinative,' that is, whether 'the erroneously admitted evidence so influenced the jury that, when considered with and balanced against all the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence.'" *State v. Driscoll*, 55 S.W.3d 350, 356 (Mo. banc 2001) (quoting *State v. Barriner*, 34 S.W.3d 139, 150 (Mo. banc 2000)). "The admission of evidence which is claimed to be evidence of other, unrelated crimes does not result in reversible error if like evidence has previously been admitted and the evidence to which the objection has been raised is thus merely cumulative." *State v. Griffin*, 876 S.W.2d 43, 45 (Mo. App. E.D. 1994).

L.B.'s testimony was received based on a belief that it was admissible under Missouri Constitution article 1, section 18(c) as an uncharged criminal act demonstrating that [Petitioner] had a propensity to engage in sexual misconduct with young women by offering them money in exchange for sexual favors. Similar evidence was also presented to the jury, without objection, via K.F.'s previously-noted testimony. L.B., like K.F., testified that [Petitioner] offered her money to expose a private part of her body, presumably for [Petitioner]'s sexual pleasure.

"When improperly admitted evidence is merely cumulative to other properly admitted evidence, the admission of the evidence is not prejudicial." *State v. Myers*, 248 S.W.3d 19, 25 (Mo. App. E.D. 2008) (quoting *State v. Newlon*, 216 S.W.3d 180, 187 (Mo. App. E.D. 2007)). Here, L.B.'s testimony was cumulative to that provided by K.F., and it was arguably less damaging because L.B. was an adult at the time of the occurrences while K.F. was a minor. Under these circumstances, we cannot say there was a reasonable probability that the jury would not have convicted [Petitioner] but for L.B.'s testimony.

(Doc. 13-6 at 5-6).

This Court finds that the Missouri Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. As an initial matter, the Court notes that the Missouri Supreme Court has considered and upheld the constitutionality of Article I, § 18(c) of the Missouri Constitution (hereinafter "§ 18(c)"). In *State v. Williams*, the court held that § 18(c) does not, on its face, violate federal due process protections. 548 S.W.3d 275, 285-86 (Mo. 2018). The court relied heavily on federal precedent in coming to this decision. *See id.* ("The reasoning of this unbroken line of federal decisions is particularly persuasive because the language of article I, section 18(c) is taken directly from the Federal Rules of Evidence. The first sentence of the amendment is functionally equivalent to Rule 414, and the second sentence tracks the language of Rule 403 nearly word for word. Based upon *LeMay* and the other federal decisions, therefore, this Court rejects Williams's claim that article I, section 18(c) violates federal due process on its face."); *see also United States v. Summage*, 575 F.3d 864, 878 (8th Cir. 2009) (discussing admissibility of prior acts to suggest a propensity to molest children under Rule 414); *see also United States v.*

*Weber*, 987 F.3d 789, 793 (8th Cir. 2021) ("This court has noted a 'strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible.'") (quoting *United States v. LeCompte*, 131 F.3d 767, 769 (8th Cir. 1997)).

Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition." *King v. Roper*, 2005 WL 1518291, at *15 (E.D. Mo. June 24, 2005) (citing *Scott v. Jones*, 915 F.2d 1188, 1190-91 (8th Cir. 1990)); *see also Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996) ("A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process.").

Here, the Missouri Court of Appeals, relying on state law, determined that any impropriety in admitting L.B.'s testimony was not sufficiently prejudicial to rise to the level of reversible error. It is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold v. Dormire,* 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law.").  And this Court agrees that there was significant other evidence supporting Petitioner's conviction.  *See, e.g., Ivy v. Bowersox,* 122 F.3d 675, 676 (8th Cir.1997) (deciding introduction of other-crimes evidence did not so infect trial so as to warrant federal habeas relief in light of other evidence of petitioner's guilt); *Robinson v. Leapley,* 26 F.3d 826, 832 (8th Cir.1994) (same).  Petitioner has not shown that the admission of L.B.'s testimony was "so conspicuously prejudicial or of such a magnitude as to fatally infect the trial."  *Parker*, 94 F.3d at 460.

Moreover, the Supreme Court has explicitly left open the question of whether the admission of evidence of other crimes solely to prove propensity violates due process. *See Estelle,* 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Indeed, many courts have held that the admission of prior crimes evidence does not warrant federal habeas relief. *See, e.g., Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) ("when a petitioner challenged the admission of his prior crimes, we denied relief because 'no clearly established Supreme Court precedent ... holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'") (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003)); *Allison v. Superintendent Waymart SCI*, 703 F. App'x 91, 97–99 (3d Cir. 2017) (denying habeas claim because petitioner could not identify clearly established Supreme Court precedent that the admission of prior bad acts evidence constitutes a violation of due process, and observing that Federal Rules of Evidence 413 and 414 allow for such evidence in sex crimes cases and have not been deemed unconstitutional); *Mejia v. Garcia*, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (noting that Ninth Circuit precedent squarely foreclosed habeas claim that admission of impermissible propensity evidence violated petitioner's clearly established due process rights) (citing *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006)).

The Court will deny relief under Ground One.

### ii.    Ground Two: Trial Court Error in Admitting Testimony from K.F. under Missouri Constitution Article I, Section 18(c)

In Ground Two, Petitioner contends that the trial court erred in admitting testimony from K.F. under § 18(c) because the testimony was substantially more prejudicial than probative.

Petitioner largely reiterates his arguments in Ground One with respect to the impropriety of K.F.'s testimony as evidence in his trial.

Respondent argues that Ground Two is procedurally defaulted, and the Court agrees. In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). *See also Kirk v. State*, 520 S.W.3d 443, 457 (Mo. 2017) ("[T]he rule is clearly established that in order to preserve a constitutional issue for appellate review, it must be raised at the earliest time consistent with good pleading and orderly procedure and must be kept alive during the course of the proceedings.") (quoting *State v. Liberty*, 370 S.W.3d 537, 546 (Mo. 2012)). Relying on these principles, the Missouri Court of Appeals found that Ground Two had not been properly preserved because Petitioner did not object to K.F.'s testimony at trial. (Doc. 13-6 at 4) (citing *McHaffie v. Bunch*, 891 S.W.2d 822, 830 (Mo. banc 1995)). The Missouri Court of Appeals then declined to exercise its discretion to review the claim for plain error. (*Id.*) (citing *State v. Morgan*, 366 S.W.3d 565, 586 (Mo. App. E.D. 2012)).

Because Petitioner failed to preserve these claims under Missouri law, the Court finds that Ground Two has been procedurally defaulted. Petitioner does not attempt to demonstrate cause and prejudice to excuse the procedural default of these claims, nor does he argue that failure to address these claims would result in a fundamental miscarriage of justice. Moreover, as set forth above, claims regarding state-law evidentiary determinations rarely give rise to a viable federal habeas claim.

For the above reasons, Ground Two is denied.

### iii.    Ground Three: Trial Court Error in Refusing to Declare a Mistrial *Sua Sponte* following Prosecutor's Question on Petitioner's Father's Incarceration

In Petitioner's third ground, Petitioner asserts that the trial court erred in failing to declare a mistrial *sua sponte* after the prosecutor asked Petitioner on cross-examination about the reason his father was incarcerated.

At trial, during cross-examination, the prosecutor asked Petitioner, "Why isn't your father here present supporting you today?" to which Petitioner responded, "He's in prison." (Doc. 13-1 at 346). The prosecutor followed, "He's in prison in North Carolina for molesting his granddaughter?" (*Id.*).  Petitioner's trial counsel objected to the question and the trial court sustained the objection (*Id.*). The Missouri Court of Appeals noted that Petitioner "did not request a mistrial or any other curative action, and he concedes that his point is reviewable only for plain error." (Doc. 13-6 at 6-7) (citing *State v. Durham*, 371 S.W.3d 30, 37 (Mo. App. E.D. 2012)). Relying on state law, the Court of Appeals said:

> While we do not condone the improper question asked by the prosecutor, we find no error, plain or otherwise, in the trial court's failing to *sua sponte* grant a mistrial in response to it. As noted, Defendant's objection to the question was sustained. He did not ask the court for a mistrial or any other relief, such as ordering the question stricken from the record or giving a curative instruction. Defendant, having received from the trial court all the relief he requested, cannot now claim error.

(Doc. 13-6 at 7) (citations omitted).

Respondent argues that Ground Three is procedurally defaulted, and the Court agrees based on the principles outlined above. Although the state court conducted a discretionary plain error review of the claim, that did not cure the procedural default; a federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." *Clark v. Bertsch*, 780 F.3d 873, 874 (8th Cir. 2015). Because Petitioner failed to preserve this claim under Missouri law, and because the Missouri Court of Appeals' discretionary plain-error review of Ground Three does not cure the procedural default of that claim, the Court finds that Ground Three has been procedurally

defaulted. *See, e.g.*, *Coleman v. Redington*, 2022 WL 225656, at *5 (E.D. Mo. Jan. 26, 2022) (finding double jeopardy claim was procedurally defaulted where the petitioner did not raise it at the trial court level but raised it on direct appeal, where the state court of appeals reviewed it for plain error only); *Clayton v. Steele*, 2018 WL 1382401, at *8 (E.D. Mo. Mar. 16, 2018) (failure to raise issue of improper striking of a juror constitutes procedural default even where the state court conducted discretionary plain-error review of the unpreserved claim).  That said, the Court also notes that the Missouri Court of Appeals' conclusion also appears consistent with federal law.  *See Carter v. Armontrout*, 929 F.2d 1294, 1297, 1297 n.2 (8th Cir. 1991) (expressing "doubt that the trial court erred in not *sua sponte* granting a mistrial" when the trial court granted "the sole relief [the defendant] requested," because doing so could "interfere with the defendant's trial strategy" and "defendant's right to proceed to verdict once jeopardy had attached would be violated").

Petitioner neither attempts to demonstrate cause and prejudice to excuse the procedural default of these claims, nor does he argue that failure to address these claims would result in a fundamental miscarriage of justice. Thus, the Court finds that Ground Three must be denied.

The Court now turns to the claims Petitioner raised in his post-conviction relief appeal.

**E.  Grounds Raised in Post-Conviction Review: Ineffectiveness of Trial Counsel**

Petitioner raises three grounds for relief alleging that his trial counsel was ineffective for failing to object to evidence adduced at trial. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). To succeed on an ineffective assistance of counsel claim, Petitioner must show 1) that counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) that Petitioner was prejudiced by counsel's

failure. *Strickland*, 466 U.S. at 687. "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To prove prejudice, Petitioner must show there was a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. *Id.* at 694. Federal habeas under AEDPA provides "doubly" deferential review of ineffective assistance claims which were decided in state court. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).

### i. Ground Four: Failure to Object to Deputy Maxey's Testimony regarding Petitioner's Silence

Petitioner asserts that his trial counsel was ineffective for failing to object to testimony by Detective Scott Maxey that improperly commented on Petitioner's post-*Miranda* silence. At trial, Deputy Scott Maxey testified that, after watching the victim's Children's Advocacy Center ("CAC") interview, he attempted to interview Petitioner. (Doc. 13-1 at 326). He testified, "I asked him a few basic questions and he just kept denying anything and at that time he said his lawyer told him not to speak anymore." (*Id.*).

On post-conviction appeal, Petitioner argued that trial counsel should have objected to Deputy Maxey's improper reference to Petitioner's exercise of his Fifth Amendment right to remain silent, and that Petitioner suffered prejudice as a result. (Doc 13-9 at 20-25). At the hearing held by the motion court, trial counsel testified that, as far as his "thought process behind" not objecting to the testimony, Deputy Maxey's comment about Petitioner's silence "was within the same sentence…as him denying the allegations and so at the time I felt that it was overall a statement that we could use to our advantage" and he did not want to "draw

attention to the tail end of the part when I thought that maybe the jury would not get caught up on [the silence] as much." (Doc. 13-7 at 24-25).

In affirming the motion court's denial of this claim, the Missouri Court of Appeals noted the applicable two-prong standard established in *Strickland* (Doc. 13-11 at 2). It further noted that under state law, "[i]n order to prevail on a claim of ineffective assistance of counsel for failure to object to evidence, [Petitioner] bears the burden of proving, among other things, that the failure to object was not strategic and was prejudicial" (*Id.* at 3) (citing *Hood v. State*, 611 S.W.3d 865, 868 (Mo.App. 2020)). The Missouri Court of Appeals found that Petitioner failed to show that trial counsel's failure to object was not the result of a reasonable strategy because trial counsel "chose not to object as a matter of trial strategy," in that he "generally sought to avoid excessive objections so as not to create the perception [Petitioner] was afraid of the jury hearing from witnesses" (*Id.*).  The state court further found that, in light of the "deliberate, strategic reasons for not objecting" conveyed by trial counsel at the motion hearing, trial counsel's "rationales are within the range of professional judgment" (*Id*. at 3-4). Accordingly, the Missouri Court of Appeals affirmed the motion court's denial of Petitioner's claim because Petitioner failed to establish deficient performance.

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the facts. The state court, relying on state law, reasonably found Petitioner did not establish a *Strickland* claim because trial counsel's failure to object to Deputy Maxey's testimony was a reasonable strategic decision.  It is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold v. Dormire,* 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri

law."). The Missouri Court of Appeals' conclusion is also consistent with federal law. *See, e.g Williams v. United States*, 452 F.3d 1009, 1013 (8th Cir. 2006) ("The court does not 'second-guess' trial strategy or rely on the benefit of hindsight and the attorney's conduct must fall below an objective standard of reasonableness to be found ineffective.") (internal citation omitted); *see also Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014) (finding it reasonable trial strategy not to emphasize the comments further by objecting to them when the comments at issue made up only eight lines of the closing argument).

For the above reasons, the Court will deny relief on Ground Four.

### ii.    Ground Five: Failure to Object to Testimony from Kelly Tesson Pertaining to Victim's Credibility

As a fifth ground for relief, Petitioner argues that his trial counsel was ineffective for failing to object to testimony from forensic interviewer Kelly Tesson purportedly vouching for the credibility of the victim.

As part of its case-in-chief at trial, the state presented testimony from Kelly Tesson, the CAC forensic interviewer who interviewed the victim regarding her allegations against Petitioner (Doc. 13-1 at 258-73).  She also testified as an expert in forensic interviewing, without objection from Petitioner (*Id.* at 263).  When the prosecutor asked how the victim "respond[ed] emotionally" while making disclosures, Ms. Tesson answered, "[A]s we got closer more into the details of her abuse she had been leaning back and she started leaning forward," and her hair "fell to her face and she kept the side of her face hidden from the camera. Her tone of voice got slower and quieted a little bit. She wasn't extremely distraught. She was pretty just matter of fact telling me what happened."  (*Id.* at 272).  The prosecutor inquired, "You said matter of factly [sic] telling you what happened, is that outside the norm of behavior you would see for victims her age when they tell you about how they've been abused?" (Doc. 13-1 at 272). Ms. Tesson

responded, "No it's very normal. I've had a couple of girls cry, a couple of girls like the norm just pretty well tell me what happened. Little children will be all over and kind of hyper but the older children are more just kind of tell me what happened." (*Id.*)  Ms. Tesson then testified that children's reactions were individualized and varied with each child based on "experiences in life and how they have been supported throughout their allegations and then what's been going on in their life and how they've shared their information." (*Id.* at 272-73). She also confirmed that the victim's statements were consistent with the information that she had been provided prior to the interview regarding the allegations. (*Id.* at 273). Petitioner's trial counsel did not object during this questioning.

At the hearing held by the motion court, trial counsel testified that he did not object to Ms. Tesson's testimony because "overall there was a strategy where I didn't want to be objecting all the time just for the overall view of it." (Doc. 13-7 at 23). He continued, "I felt like the nature of the CAC interview was something that we could on cross examination discuss about sort of the limitations of those interviews in general." (*Id.* at 23-24).

In its post-conviction opinion, the Missouri Court of Appeals, as with Ground Five, found that Petitioner failed to satisfy the deficient performance prong of *Strickland* (Doc. 13-11 at 3-4). The Missouri Court of Appeals found that counsel's belief that "the nature of the forensic interview was something that could be better explored on cross-examination than through an objection" was a "deliberate, strategic reason[] for not objecting" that was "within the range of professional judgment" (*Id.*).  Accordingly, the Missouri Court of Appeals affirmed denial of Petitioner's claim.

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of, *Strickland*, nor was it based on an unreasonable determination of the

facts. As stated previously, the state court noted the applicable two-prong standard established in *Strickland* and, relying on state law, reasonably found Petitioner did not establish a *Strickland* claim because trial counsel's failure to object to the forensic interviewer's testimony was a reasonable strategic decision (Doc. 13-11 at 2-4). The Missouri Court of Appeals' conclusion also has support in the record: trial counsel elicited from Ms. Tesson on cross-examination that her job does not involve determinations of veracity and she had "no way of knowing whether [the victim] was telling the truth" (Doc. 13-1 at 275).

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). For this and the above reasons, the Court will deny relief on Ground Five.

### iii.    Ground Six: Failure to Object to Prosecutor's Questioning of Petitioner

As a sixth ground of relief, Petitioner asserts that trial counsel was ineffective for failing to object to the prosecutor's questions about Petitioner's credibility on cross-examination of Petitioner.

During cross-examination at trial, the prosecutor asked Petitioner, "After hearing the testimony not just of [the victim] who you say you care about very much, but also [L.B.] and [K.F.], should you pay for your crimes?" (Doc. 13-1 at 349). Petitioner responded, "There is no crimes [sic] because I didn't touch them, I didn't do nothing to them." (*Id.*). The prosecutor then followed, "So you want everyone to believe that everyone is lying except for you?" and Petitioner returned, "If that's what it's come down to. I never touched them." (*Id.*). Petitioner's trial counsel did not object and cross-examination then concluded.

At the hearing held by the motion court, trial counsel agreed that "credibility is the providence of the finder of fact," in this case the jury. (Doc. 13-7 at 49). When asked why he did not object to the prosecutor's question, he explained, "I think a lot of times there's questions that

may not be legally admissible but people on the jury may want an answer to" (Doc. 13-7 at 49).

He continued, "I had a lot of conversations with [Petitioner and] from knowing who he was and

also seeing his other testimony I thought he'd be able to handle that question well" (*Id.* at 49-50).

In its post-conviction opinion, the Missouri Court of Appeals, as with Grounds Five and

Six, found that Petitioner failed to satisfy the deficient performance prong of *Strickland*. (Doc.

13-11 at 3-4). The state court noted that trial counsel identified a "deliberate, strategic reason[]"

for not objecting:

> [Petitioner] testified very well, and Counsel wanted the jury to come away with the
> impression [Petitioner] was unafraid to answer the state's questions directly. Even
> though the question about witness veracity may not have been admissible, Counsel
> knew the jury may want an answer and he was confident [Petitioner] could provide
> a good one.

(*Id.* at 3). The Missouri Court of Appeals found that this choice, as part of trial counsel's general

strategy to "avoid excessive objections so as not to create the perception that [Petitioner] was

afraid of the jury hearing from witnesses," was "within the range of professional judgment"

constituting effective assistance of counsel (*Id.* at 3-4). Accordingly, the Missouri Court of

Appeals affirmed denial of Petitioner's claim.

The Missouri Court of Appeals' rejection of the claim was not contrary to or an

objectively unreasonable application of *Strickland*. The court properly articulated the

*Strickland* standard and relied on applicable state law (Doc. 13-11 at 2-3). Specifically, with

regard to the first *Strickland* prong (deficient performance), it was not objectively unreasonable

for the state court to find that Petitioner's trial counsel did not make an unreasonable strategic

decision. Nor was the Missouri Court of Appeals' conclusion based on an unreasonable

determination of the facts. Indeed, trial counsel objected numerous times throughout the trial,

including directly before the line of questioning at issue in Ground Six (Doc. 13-1 at 348-49; *see*

*also id.* at 253-54, 264, 266, 308). The Court agrees that it was not unreasonable for trial counsel to refrain from making certain objections—particularly to evidence he viewed as less harmful—in order to avoid their effect on the jury.

The Court reiterates that it is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold*, 675 F.3d at 1086. For this and all of the above reasons, Ground Six will be denied.

### III.    CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief.  Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued.  28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order.

Dated this 26th day of March, 2025.


/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE